UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WILLIAM MALIK PEARSON, JR.,          )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )          No. 4:22-cv-00806-ACL
                                     )
CITY OF ST. LOUIS, et al.,           )
                                     )
        Defendants.                  )

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff William Malik Pearson, Jr.

for leave to commence this civil action without prepayment of the required filing fee. (Docket No.

2). Having reviewed the motion and the financial information submitted in support, the Court has

determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial

partial filing fee of $59.35. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed

below, the Court will dismiss plaintiff's complaint without prejudice.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 5). The account statement shows an average monthly deposit of $296.75. The Court will therefore assess an initial partial filing fee of $59.35, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

2

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the St. Louis City Justice Center in St. Louis, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming the City of St. Louis, the State of Missouri, the St. Louis Metropolitan Police Department (SLMPD) Homicide Division, Circuit Attorney Kimberly M. Gardner, Detective Daniel Sweeney, Detective Jimmy Hyatt, and Circuit Attorney Investigator Tom Mauzy as defendants. (Docket No. 1 at 1-5). Circuit Attorney Gardner, Detective Sweeney, Detective Hyatt, and Investigator Mauzy are sued in their individual capacities only. (Docket No. 1 at 3-4). The allegations in the complaint concern plaintiff's contention that the criminal investigation against him for first-degree murder violated his constitutional rights.

In the "Statement of Claim," plaintiff asserts that the City of St. Louis "slandered [his] name, life, character and future job and life opportunities." (Docket No. 1 at 6). By way of explanation, he states that "Fox News posted [his] name on television," and that "local newspaper organization[s] like [the] St. Louis Post Dispatch aired [his] named to the public." Meanwhile, "St.

3

Louis public and private companies posted [him] on several social media websites for the world to see, review, share and comment." All of these posts were "saying [he] was charged with the murder of James Scales," and that he "sat incarcerated for 4½ years with no bail." Plaintiff also claims that "SLMPD officers violated [his] 4th, 5th, 6th, 8th and 14th amendment [rights]," and also "harassed [him] and [his] family."

With regard to the State of Missouri, plaintiff contends that he "went to trial with no evidence for the murder of James Scales (1922-CR01459) and was found not guilty/acquitted of all charges."[1] He states that he has state law claims, including false arrest, false imprisonment, malicious prosecution, spoliation of evidence, intentional infliction of emotional distress, abuse of process, defamation, willful misconduct, conspiracy, negligence, malicious prosecution, the "use of unreliable and [fraudulent] investigatory techniques," the "procurement of unreliable and fabricated evidence," and the violation of policies and procedures. (Docket No. 1 at 6-7). Plaintiff further asserts that he was "acquitted of all charges" on April 12, 2022, and that he blames "the state for continuing to let the City of St. Louis prosecute [him] to the full extent with no witnesses of the crime[,] nor evidence proving [his] guilt." (Docket No. 1 at 7). He states that he "was held without bail," and that he is "emotionally traumatized by the experience and most likely will need [therapy]…to get over this."

As to Circuit Attorney Gardner, plaintiff complains that Gardner "insisted that the prosecutors proceed with trial with no evidence against [him] to prove [his] guilt." (Docket No. 1

---

[1] As plaintiff was acquitted, the Court could not find Case No. 1922-CR01459 on Case.net, Missouri's online case management system. The Court notes, however, that plaintiff remains incarcerated due to three other cases. First, in *State of Missouri v. Pearson*, No. 1822-CR00456-01 (22nd Jud. Cir., St. Louis City), he is charged with possession of a controlled substance. Second, in *State of Missouri v. Pearson*, No. 1822-CR03536-01 (22nd Jud. Cir., St. Louis City), plaintiff is charged with first-degree murder, first-degree assault, and two counts of armed criminal action. Finally, in *State of Missouri v. Pearson*, No. 1922-CR01462 (22nd Jud. Cir., St. Louis City), he has been indicted by a grand jury for first-degree murder, two counts of armed criminal action, first-degree assault, and two counts of tampering with physical evidence. Case No. 1822-CR03536-01 has been set for trial on November 7, 2022. The two other cases remain pending and are set for a status conference on October 14, 2022.

4

at 8). He is upset that on March 14, 2018, Gardner "let a jury of 16 people decide [his] fate" when "she presented phone calls to a grand jury and indicted [him] on charges of" first-degree murder, first-degree assault, armed criminal action, conspiracy to commit murder, tampering with a witness, and conspiracy to tamper with a witness. Plaintiff alleges that Gardner "[n]ever considered looking into the investigation the detectives and investigators did to even consider [him] innocent." He adds that after "2 weeks of pretrial and trial in April 2022," he "was acquitted by a jury of all charges." Plaintiff "feel[s]" that Gardner "didn't do a good job as the circuit attorney or as a human being," suggesting that Gardner "knew the inadmissible evidence she had against [him]" violated his right to due process, and caused him to be rebooked "several times," thereby stretching "out [his] time in city jail." (Docket No. 1 at 8-9). In short, plaintiff states that Gardner "tarnished [his] name and legacy for [his] future kids and grandkids." (Docket No. 1 at 9).

Concerning Detective Sweeney, plaintiff asserts that Sweeney "violated [him] as a human, violated [his] constitutional rights[,] and now make[s] [him] look a[t] SLMPD officers different[ly]." (Docket No. 1 at 10). He states that Sweeney did "not identify [him] in trial after being detained for 4½ years for a crime [Sweeney] and his co-workers assumed so highly that [plaintiff] committed." Plaintiff accuses Sweeney of a "lack of passion or empathy" and for a "lack of properly investigating this cause." He states that he "will be scarred for life because [of Sweeney's] lack of police work and improper investigation." As to Detective Hyatt, plaintiff claims that Hyatt "assisted Detective D. Sweeney and traumatized [him] as much as [Sweeney]." He states that he "can never forget their name or faces for what they put [him] through." (Docket No. 1 at 10-11). Plaintiff thus holds both Sweeney and Hyatt responsible. (Docket No. 1 at 11).

Finally, regarding Investigator Mauzy, plaintiff identifies Mauzy as "the investigator of the circuit attorney who assisted the SLMPD Homicide Unit to build a murder case on [him]." He

alleges that from the time of the death of James Scales, "Mauzy used Crimatrix and other illegal and home made investigating tactics to convince the judge and grand jury to indict [him] on Scales['] murder." According to plaintiff, everything that Mauzy "used was inadmissible in [his] trial because of the lack of professionalism and real police work." Mauzy's "investigation" and "assumptions" have allegedly "caused [plaintiff] so much pain and suffering" that he "will need [therapy]."

Based on these facts, plaintiff states that he suffers from "mental, physical and emotional distress [from] being framed for murder." (Docket No. 1 at 12). He seeks $10 million in damages. (Docket No. 1 at 13).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing defendants of constitutional violations that resulted in him being charged with first-degree murder, a charge of which he was eventually acquitted. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Claim Against the City of St. Louis

Plaintiff claims that the City of St. Louis "slandered [his] name" when he was charged with murdering James Scales. A local governing body such as St. Louis may be sued under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*,

883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

    3) That plaintiff was injured by acts pursuant to the governmental
        entity's custom, i.e., that the custom was a moving force behind
        the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

    Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

    Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the proposition that his rights were violated due to an unconstitutional City of St. Louis policy or custom, or that the city was deliberately indifferent in training or supervising its employees.

    First, regarding policy, plaintiff points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" as being at issue in this case. Certainly, he has not alleged that he was arrested due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding

such matters." Instead, plaintiff complains that Fox News, local newspapers, and unidentified local companies posted about his case on social media websites. None of these actions – all undertaken by unrelated third-parties – has been shown to be attributable to an official decision by the City of St. Louis.

Second, as to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [City of St. Louis] employees," much less that city policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. To the contrary, as noted above, the entirety of plaintiff's claim against the city consists of accusations regarding third-party media entities which purportedly posted things about him online. Thus, rather than showing a pattern of municipally-accepted misconduct, plaintiff has failed to demonstrate even a single instance that can be attributed to St. Louis itself.

Third, and similarly, plaintiff has not shown that the City of St. Louis was deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, plaintiff must present facts that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." As previously explained, plaintiff has not developed the existence of any such pattern.

Finally, to the extent that plaintiff seeks to hold the City of St. Louis liable for "SLMPD officers [who] violated" his constitutional rights, the Court notes that a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality...cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A

local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all these reasons, plaintiff has failed to state a claim against the City of St. Louis. Therefore, this claim must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## B. Claim Against the State of Missouri

Plaintiff accuses the State of Missouri of "continuing to let the City of St. Louis prosecute [him] to the full extent with no witnesses of the crime nor evidence proving [his] guilt." The claim fails for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because the State of Missouri is not a § 1983 "person" for purposes of plaintiff's claim for money damages, he is missing an essential element of a cause of action. Therefore, the claim must be dismissed.

10

Second, plaintiff's claim against the State of Missouri is barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

11

The first exception does not apply because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In this case, sovereign immunity bars plaintiff's claim against the State of Missouri for any type of relief, be it monetary or injunctive. Furthermore, no exception to sovereign immunity is present here. Therefore, for this reason as well, plaintiff's claim against the state must be dismissed.

## C. SLMPD Homicide Division

In the caption of the complaint, plaintiff names the SLMPD Homicide Division as a defendant. Under 42 U.S.C. § 1983, however, a police department is a department or subdivision of local government, and not a juridical entity capable of being sued. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating

12

that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Therefore, to the extent that plaintiff is attempting to sue the SLMPD Homicide Division, the claim must be dismissed.

### D.  Claim Against Circuit Attorney Kimberly Gardner

Plaintiff states that Circuit Attorney Gardner "insisted that the prosecutors proceed with trial with no evidence," presented evidence to a grand jury, and had him indicted on various charges, including first-degree murder. As a prosecutor, though, Gardner is immune from suit.

Prosecutors are immune from 42 U.S.C. § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the state in a criminal prosecution. *Id.* On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id.*

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence").

In this case, plaintiff's facts – such as they are – indicate that he is upset about Circuit Attorney Gardner's performance as an advocate for the state in a criminal prosecution. That is, his vague and conclusory claim rests squarely on Gardner's decision to prosecute him, to present evidence to a grand jury, and to indict him. These are actions "intimately associated with the judicial phase of the criminal process," and entitle her to absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (explaining that prosecutorial acts entitled to absolute immunity "include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made").

Even if Circuit Attorney Gardner was not immune, plaintiff has failed to state an individual capacity claim against her. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights."

14

*Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

There are no facts in the complaint indicating that Circuit Attorney Gardner personally took an action that resulted in the violation of plaintiff's constitutional rights. At most, he has shown that Gardner lost the criminal case she brought against him, but this alone does not demonstrate a constitutional violation. In other words, her decision to prosecute him, her presentation to the grand jury, and her knowledge that the evidence she had against him was "inadmissible," all fail to describe an unconstitutional act. Without a causal connection between an action on Gardner's part, and a deprivation of plaintiff's rights, there can be no 42 U.S.C. § 1983 claim. Therefore, for this reason as well, the individual capacity claim against Gardner must be dismissed.

### E. Claims Against Detective Sweeney, Detective Hyatt, and Investigator Mauzy

Plaintiff alleges that Detective Sweeney "violated [plaintiff's] constitutional rights," that Sweeney did "not identify [plaintiff] in trial after being detained for 4½ years," that Sweeney lacks "passion or empathy," and that Sweeney did not properly do his work or investigate plaintiff's case. As to Detective Hyatt, he states that Hyatt "assisted" Sweeney. With regard to Investigator Mauzy, plaintiff argues that "Mauzy used Crimatrix and other illegal and home made investigating tactics to convince the judge and grand jury to indict [him]," and that everything that Mauzy "used

15

was inadmissible in [his] trial because of the lack of professionalism and real police work." None of these unsupported conclusions is sufficient to state a claim.

As set forth above, to survive initial review, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. That is, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). "While the court must accept allegations of fact as true...the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). Furthermore, a pleading is insufficient if it offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

Here, plaintiff does not actually present any factual allegations against these three defendants. Instead, he simply concludes – without any underpinning – that they violated his rights, used illegal tactics, and improperly investigated his case. While he recites various causes of action, there is not a single fact to back any of them up, leaving the Court to speculate as to what each defendant actually did or did not do to harm him. This is not sufficient to state a claim. Therefore, the individual capacity claims against defendants Sweeney, Hyatt, and Mauzy must be dismissed.

**F. Motion to Appoint Counsel**

Plaintiff has filed a motion for appointment of counsel. (Docket No. 3). The motion will be denied as moot as this action is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $59.35 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 19th day of _September_, 2022.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE